IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MIGUEL A. MÁRQUEZ DELGADO; HIS WIFE GLORYVID FIGUEROA; AND THEIR CONYUGAL PARTNERSHIP MÁRQUEZ FIGUEROA.<br><br>Plaintiffs<br><br>vs.<br><br>CARIBBEAN PETROLEUM CORPORATION; CARIBBEAN PETROLEUM REFINING LP; CARIBBEAN PETROLEUM LP; CARIBBEAN OIL LP; GULF PETROLEUM (PUERTO RICO); UPT UNITED PRODUCT TANKERS GmbH & CO., KG; UPT UNITED PRODUCT TANKERS (Americas) LLC; STEAMSHIP MUTUAL UNDERWRITING ASSOCIATION (Bermuda) LTD; TOTAL, S.A.; ROYAL DUTCH SHELL plc; SHELL OIL COMPANY; BP PRODUCTS NORTH AMERICA, INC.; ACE LIMITED; LIBERTY INTERNATIONAL UNDERWRITERS; NAVIGATORS GROUP, INC.; AND JOHN DOE AND RICHARD ROE.<br><br>Defendants | CIVIL NO.:<br><br><br><br>RE: PLAINTIFFS DEMAND TRIAL BY JURY |

## COMPLAINT

TO THE HONORABLE COURT:

Come now the plaintiffs, through the undersigned legal representation, and very respectfully state, request and pray:

## INTRODUCTION

This is an action, to recover damages suffered by Plaintiffs as a result of the explosion and fire of approximately twenty-one fuel storage tanks that occurred on October 23, 2009, at about 12:30 a.m., at the Gulf Oil Facility (the "Gulf Oil Facility") (which consists of a petroleum refinery, marine dock/terminal, pipelines and storage tanks) owned and/or operated by Caribbean Petroleum Refining LP ("CPR") and located in Bayamón, Puerto Rico.

## JURISDICTION AND VENUE

The Honorable Court has jurisdiction over the captioned parties and the subject matter in this litigation since all parties on either side of the controversy are of diverse citizenship and the amount in controversy, exclusive of interest and costs exceeds SEVENTY FIVE THOUSAND DOLLARS ($75,000.00) in accordance with 28 USC 1332.

Venue is proper within this district as the actions and transactions complained of, occurred within the Commonwealth of Puerto Rico.

As stated, this Court has jurisdiction over this case, pursuant to 28 U.S.C. §1332(d)(2)(C), because the matter in controversy exceeds the sum or value of $2,000,000 exclusive of interest and costs, and there is complete diversity of citizenship between the plaintiffs and defendants.

This Court has subject matter jurisdiction over the state law claim asserted herein pursuant to 28 U.S.C. §1367 (a) because such claims are so related to the controversy under Article III of the United States Constitution.

Prosecution of this action in this district is proper under 28 U.S.C. §§ 1391(b)(2)-(3) because all the events or omissions giving rise to the claims asserted herein occurred in this district and because at least four defendants may be found in this district and there is no district in which the action may otherwise be brought.

This Court´s exercise of general jurisdiction is appropriate as to each of the defendants because they have substantial or continuous and systematic contacts with Puerto Rico that approximate physical presence.

## THE PARTIES

I. PLAINTIFFS

Plaintiffs Miguel A. Márquez Delgado y Gloryvid Figueroa are married, and both are citizens and residents of Puerto Rico, thus domiciled within this district.

II. DEFENDANTS

a.  Caribbean Petroleum Corporation ("CPC"), a Delaware corporation doing business in Puerto Rico, with offices located at Carretera Estatal No. 28, kilómetro 2.2., Reparto Industrial Luchetti, Bayamón, Puerto Rico 00961.

b.  Caribbean Petroleum Refining LP ("CPR"), a Limited Partnership organized under the laws of Delaware, which is doing business in this district, with offices located at Carretera Estatal No. 28, kilómetro 2.2., Reparto Industrial Luchetti, Bayamón, Puerto Rico 00961.  CPR is an owner and/or operator of the Gulf Oil Facility, which consists of a tank farm of approximately 40 storage tanks for the storage of fuels and ultra hazardous and explosive products: a marine dock/terminal used to dock tankers and unload fuels and ultra hazardous and

explosive products from the tankers; and pipelines that connect the marine dock/terminal to the storage tanks and which are used to transfer the fuels and ultra hazardous and explosive materials from the tankers to the storage tanks and to distribute said products to various purchasers.

c. Caribbean Petroleum LP ("CPLP"), a Delaware corporation doing business in this district, with offices located at Carretera Estatal No. 28, kilómetro 2.2., Reparto Industrial Luchetti, Bayamón, Puerto Rico 00961.  CPLP is a retail seller of fuels through service stations throughout Puerto Rico.  CPLP owned some of the fuel and ultra hazardous and explosive products that were stored, or that were in the process of being stored at the Gulf Oil Facility, or that were being unloaded from the M/T Cape Bruny at the Gulf Oil Facility on October 23, 2009, which burned or exploded.

d. Caribbean Oil LP ("COLP"), a Delaware corporation doing business in this district, with offices located at Carretera Estatal No. 28, kilómetro 2.2, Reparto Industrial Luchetti, Bayamón, Puerto Rico 00961.  CPLP is a retail seller of fuels through various service stations in Puerto Rico.  COLP owned some of the fuel and ultra hazardous and explosive products that were stored, or that were in the process of being stored at the Gulf Oil Facility, or that were being unloaded from the M/T Cape Bruny at the Gulf Oil Facility on October 23, 2009, which burned or exploded.

e. Gulf Petroleum (Puerto Rico) Corporation ("GPC"), a corporation organized under the laws of Delaware, which is doing business in this district, with offices located at Carretera Estatal No. 28, kilómetro 2.2., Reparto Industrial Luchetti,

    Bayamón, Puerto Rico 00961.  GPC is an owner and/or operator of the Gulf Oil Facility.

f.     UPT United Product Tankers GmbH & Co. KG ("UPT"), a corporation organized under the laws of Germany, with its principal place of business at Gasstrasse 4, 22761 Hamburg, Germany.  UPT is an international operator of over thirty tanker vessels, predominantly trading in Europe, the Mediterranean and the United States of America, including Puerto Rico, and is in the business of transporting, distributing and delivering fuels.  At the time of the incident that forms the basis of this suit, UPT was in the process of transporting, distributing and delivering highly flammable fuel using the M/T Cape Bruny, and was unloading it at the Gulf Oil Facility´s marine dock/terminal by way of the pipelines for storage in the storage tanks.

g.     UPT United Product Tankers (Americas) LLC ("UPT Americas"), a corporation organized under the laws of Pennsylvania or Delaware, with its principal place of business at 900 West Valley Road, Suite 101, West Valley Business Center, Wayne, Pennsylvania  19087-1850.  UPT Americas is a wholly-owned subsidiary of UPT, and carries out UPT´s operations in the United States of America, including Puerto Rico.  At the time of the incident that forms the basis of this suit, UPT Americas was in the process of transporting, distributing and delivering highly flammable fuel using the M/T Cape Bruny, and was unloading it at the Gulf Oil Facility´s marine dock/terminal by way of the pipelines for storage in the storage tanks.

h.  Steamship Mutual Underwriting Association (Bermuda) Ltd. ("Steamship Bermuda"), is a mutual Protection and Indemnity Association or P&I Club organized under the laws of Bermuda, with its principal place of business at Washington Mall 1, Church Street, PO Box HM 447, Hamilton HM BX Bermuda, which provides insurance coverage to vessels and shipowners. Steamship Bermuda provided insurance coverage to the M/T Cape Bruny, for the incident that forms the basis of this suit and is directly liable to Plaintiffs for their damages.

i.  Total, S.A. ("Total"), a corporation organized under the laws of the Republic of France, with its principal offices located at 2 Place Jean Miller, La Defénse 6, 92400 Courbevoie, France. Total is a refiner and marketer of fuels, with operations in many countries throughout the world and in 20 countries in Latin America and the Caribbean, including Puerto Rico. Total owned some of the fuel and ultra hazardous and explosive products that were stored, or that were in the process of being stored at the Gulf Oil Facility, or that were being unloaded from the M/T Cape Bruny at the Gulf Oil Facility on October 23, 2009, which burned or exploded.

j.  Royal Dutch Shell plc ("Shell"), a corporation organized under the laws of The Netherlands, with its principal offices located in The Hague, Netherlands. Shell is a refiner and marketer of fuels, with operations ni many countries throughout the world and in Latin American and the Caribbean, including Puerto Rico. Shell owned some of the fuel and ultra hazardous and explosive products that were stored, or that were in the process of being stored at the Gulf Oil Facility, or that

        were being unloaded from the M/T Cape Bruny at the Gulf Oil Facility on October 23, 2009, which burned or exploded.

k.     Shell Oil Company ("Shell Oil"), a corporation organized under the laws of Delaware, with its principal offices located at 910 Louisiana Street, Houston, Texas 77002. Shell Oil is a refiner and marketer of fuels, with operations in many countries throughout the world and in Latin America and the Caribbean, including Puerto Rico. Shell Oil owned some of the fuel and ultra hazardous and explosive products that were stored, or that were in the process of being stored at the Gulf Oil Facility, or that were being unloaded from the M/T Cape Bruny at the Gulf Oil Facility on October 23, 2009, which burned or exploded.

l.     BP Products North America ("BP"), a corporation under the laws of Maryland. BP is a refiner and marketer of fuels, with operations in many countries throughout the world and in Latin America and the Caribbean, including Puerto Rico. BP owned some of the fuel and ultra hazardous and explosive products that were stored, or that were in the process of being stored at the Gulf Oil Facility, or that were being unloaded from the M/T Cape Bruny at the Gulf Oil Facility on October 23, 2009, which burned or explodes.

m.     Ace Limited ("ACE"), a Swiss corporation with executive offices in Zurich, Bermuda and New York. The New York Office is located at 1133 Avenue of the Americas, New York, N.Y. 10036. ACE through one or more of its subsidiary companies/insurers, provided insurance coverage to some of the defendants, which were in force at the time of the explosion that forms the basis of this suit.

n.     Liberty International Underwriters ("Liberty"), a division of Liberty Mutual Group, is a corporation organized under the laws of Massachusetts and has its principal place of business in Boston. Liberty has an office in Puerto Rico at 304 Ponce de León Avenue, San Juan, Puerto Rico 00918. Liberty through one or more of its subsidiary companies/insurers, provided insurance coverage to some of the defendants, which were in force at the time of the explosion that forms the basis of this suit.

o.     Navigators Group, Inc. ("Navigators") is a corporation organized under the laws of Delaware. Navigators has its principal place of business in New York at One Penn Plaza, New York, 32nd floor, New York 10119. Navigators through one or more of its subsidiary companies/insurers, provided insurance coverage to some of the defendants, which were in force at the time of the explosion that forms the basis of this suit.

## FACTUAL ALLEGATIONS

1.     On October 23, 2009, at approximately 12:30 a.m., an explosion occurred at the Gulf Oil Facility. Approximately twenty-one (21) storage tanks containing fuel, diesel, petroleum and other ultra hazardous and highly explosive products exploded, producing an enormous fire and releasing toxic gases and substances into the air, water and soil. The blast was so powerful that it registered 2.8 in the Richter scale and was felt as far away as Culebra, Vieques and even the Virgin Islands.

2.     The explosion occurred while the M/T Cape Bruny was unloading its cargo of 278,000 gallons of highly flammable fuel at the marine dock/terminal. The M/T Cape Bruny pumped too much of its cargo (fuel) into the pipelines that connect the marine

dock/terminal, thereby causing the recipient storage tank to overflow without detection. As the cargo (fuel) spilled, it vaporized and spread across the Gulf Oil Facility. The vaporized fuel found a source of ignition, causing the explosion. The Gulf Oil Facility´s computerized monitoring system was not operational and a mechanical gauge attached to the storage tank could not be monitored by the two available Gulf Oil Facility employees involved in the operation. At the time of the explosion and while the transfer of the M/T Cape Bruny´s cargo was being carried out, there were only five employees at the Gulf Oil Terminal: one security guard, two laboratory employees, and two more employees to perform all other required operations.

3. On October 23, 2009, around 12:30 a.m., Plaintiff Miguel Márquez Delgado was returning to this home in his Mazda 3, 2006 vehicle. When he was passing in front of CAPECO he started smelling some toxic fumes and then, suddenly, saw a brilliant light and heard a terrible explosion that lifted his car about 7 feet up, destroyed all window and wind-shield glasses and rendered his car a total loss.

4. The explosion and fire, which lasted four days, generated an enormous smoke plume full of hazardous contaminants which also affected plaintiff.

5. As a consequence of said impact the plaintiff suffered injuries to his lumbar region and right wrist for which he has been receiving therapy. Most importantly, he was in a state of nervous shock, fear and apprehension which has been diagnosed as post-traumatic stress disorder, for which he is receiving psychotherapy. This serious emotional condition is disabling and may be permanent. In addition, the great physical and emotional impact suffered by the plaintiff have produced a serious and permanent condition of hypostension

6.      In addition, because of his physical and emotional traumas, the plaintiff has not been able to perform work since the accident, with substantial loss of income.

7.      Co-plaintiff Gloryvid Figueroa, the wife of Miguel Márquez, has suffered great anguish, depression and anxiety because of the injuries suffered by her husband.

8.      The fire and explosion, and the resulting damages suffered by the Plaintiffs was caused by the concurrent actions, inactions and joint negligence of all the Defendants, as will be explained in more detail herein.

## FIRST CAUSE OF ACTION
## NEGLIGENCE OF THE OWNERS AND OPERATORS
## OF THE OPERATIONS OF THE GULF OIL FACILITY

1.      Although CPC, CPR, CPLP, COLP and GPC are currently organized as five legally separate entitles, they continue to operate as a single enterprise for all practical purposes.  These five entities, (collectively the "Capeco Defendants") had full control of the operations carried out at the Gulf Oil Facility on October 23, 2009.

2.      The explosion and resultant fire and toxic release was caused by the negligence and fault of the Capeco Defendants as follows:

a.      Transferring or allowing the transfer of fuel and/or other explosive materials from the M/T Cape Bruny into a storage tank that could not be properly monitored because the Gulf Oil Facility´s computerized monitoring system was not fully operational;

b.      Transferring or allowing the transfer of fuel and/or other explosive materials from the M/T Cape Bruny into a storage tank that was equipped only with a mechanical gauge, which could not be monitored.

c.     Not having sufficient and well trained personnel to monitor such transfer of fuel.

d.     Allowing overflow of the storage tank that was receiving fuel and/or other explosive materials from the M/T Cape Bruny:

e.     Failing to coordinate with the crew of the M/T Cape Bruny the operation for the transfer of fuel and/or other explosive materials that was underway when the explosion occurred;

f.     Failing to properly operate the Gulf Oil Facility so as to prevent the explosion, fire and toxic release and failing to prevent actions that either caused or contributed to the explosion, fire and toxic release;

g.     Failing to have and enforce proper rules and regulations pertaining to the safe operations of the Gulf Oil Facility which, if they had been so promulgated, and enforced, would have averted said explosion, fire and toxic release;

h.     Failure to timely bring the release of fuel and/or other explosive materials under control;

i.     Failure to reach promptly and properly to danger signs;

j.     Failure to have adequate water supply and other emergency systems to stop and/or control the explosion and fire;

k.     Failure to follow and comply with standards rules, regulations and statutes, including those set out in and incorporated by reference into the Code of Federal Regulations, which are designed to prevent the type of explosion, fire and toxic release that occurred at the Gulf Oil Facility;

l.     The explosion, fire and resultant toxic release was caused by defective equipment which was in the care, custody and control of the Capeco Defendants.

The Capeco Defendants knew or should have known of these defects and the Capeco Defendants are, therefore, liable for the injuries and damages suffered by Plaintiffs.

## SECOND CAUSE OF ACTION
## LIABILITY OF PARTIES RESPONSIBLE FOR TRANSPORTATION AND DELIVERY OF DANGEROUS CARGO.

UPT, UPT Americas were in the process of transporting and delivering a highly flammable cargo when the explosion occurred. Those Defendants were negligent and otherwise at fault for the following:

a. Failing to take appropriate and reasonable measures to ensure the safe offloading of the flammable cargo it carried;

b. Failing to have appropriate trained personnel in charge of the transfer operations;

c. Failing to have an appropriate monitoring system to track the highly volatile cargo it was carrying and offloading;

d. Failing to have an appropriate warning system to alert persons at risk of leaks as well as the risks of fire and explosions;

e. Pumping too much flammable fuel from the M/T Cape Bruny to the receiving storage tank;

f. Failing to coordinate with personnel at the Gulf Oil Facility to insure that the receiving tank did no overflow;

g. Transferring or allowing the transfer of fuel and/or other explosive materials from the M/T Cape Bruny into a storage tank that could not be properly monitored because the Gulf Oil Facility´s computerized monitoring system was not fully operational;

h. Transferring or allowing the transfer of fuel and/or other explosive materials from the M/T Cape Bruny into a storage tank that was equipped only with a mechanical gauge, which could not be monitored;

i. Transferring or allowing the transfer of fuel and/or other explosive materials from the M/T Cape Bruny while only two employees of the Gulf Oil Facility were available to perform the operation;

j. Allowing overflow of the storage tank that was receiving fuel and/or other explosive materials from the M/T Cape Bruny;

k. Failing to coordinate between the Gulf Oil Facility employees and the crew of the M/T Cape Bruny the operation for the transfer of fuel and/or other explosive materials that was underway when the explosion occurred;

l. Failing to properly operate the M/T Cape Bruny so as to prevent the explosion, fire and toxic release and failing to prevent actions that either caused or contributed to the explosion, fire and toxic release;

m. Failing to ascertain that the receiving storage tanks and equipment were free from defects and/or in proper working order;

n. Failure to timely warn;

o. Failure to timely bring the release of fuel and/or other explosive materials under control;

p. Failure to provide appropriate accident prevention equipment;

q. Failure to observe and read the gauges of the tank that was receiving fuel and/or other explosive materials;

r. Failure to react properly to danger signs;

s.  Failure to follow and comply with standards rules, regulations and statutes, including those set out in and incorporated by reference into the Code of Federal Regulations, which regulate the transfer of a dangerous cargo and are designed to prevent the type of explosion, fire and toxic release that occurred at the Gulf Oil Facility; and of this matter, all of which acts are in violation of the laws of Puerto Rico and the United States of America.

## FOURTH CAUSE OF ACTION
## NEGLIGENT ENTRUSTMENT OF FLAMABLE MATERIALS.

CPC, CPLP, COLP, Harbor Fuel, Total Petroleum, Total, Best Petroleum, Shell and Shell Oil (the "Cargo Defendants") all owned or had control over all or some of the fuel and ultra hazardous and explosive products that were stored, or that were in the process of being stored at the Gulf Oil Facility, or that were being unloaded from the M/T Cape Bruny at the Gulf Oil Facility on October 23, 2009, which burned or exploded. Furthermore, the Vessel Defendants (who were identified in ¶ 30) had control over the fuel and ultra hazardous cargo that was being unloaded from the M/T Cape Bruny on October 23, 2009.

The Cargo Defendants and the Vessel Defendants either knew, or should have known that the Gulf Oil Facility did not have the proper or adequate equipment or personnel to safely store fuel or other ultra hazardous or explosive materials; Despite this knowledge, and in complete disregard of the safety of  third parties like the Plaintiffs, they elected to store their fuel and ultra hazardous and explosive materials at the Gulf Oil Facility, some of which was being unloaded from the M/T Cape Bruny when

the explosion occurred.  By these actions the Cargo Defendants and the Vessel Defendants put at risk the Plaintiffs for damages as are here alleged.

The injuries suffered by Plaintiffs are also a direct result of the Cargo Defendants and the Vessel Defendants having negligently entrusted to the Capeco Defendants their fuel and ultra hazardous and explosive products.

### FIFTH CAUSE OF ACTION
### FAILURE BY ALL DEFENDANTS TO PROPERLY
### RESPOND TO EMERGENCY.

The injuries to Plaintiffs were also caused by, or aggravated, by the fact that Defendants failed to properly respond to the explosion, fire and subsequent toxic release and take necessary actions to mitigate the danger to third parties as the plaintiffs.

Furthermore, Defendants failed to have adequate water supply and other firefighting systems required by the nature of their hazardous operations, which would have prevented the spread of the original explosion and fire would have minimized the damage caused thereby.

### SIXTH CAUSE OF ACTION
### RES IPSA LOQUITOUR

In addition to the negligent actions described above, and in the alternative thereto, the injuries and damages suffered by Plaintiffs were caused by the acts and/or omissions of the Defendants that are beyond proof by the Plaintiffs, but which were within the knowledge and control of the Defendants, there being no other possible conclusion than the explosion, fire and toxic release resulted from the negligence of Defendants.  Furthermore, the explosion, fire and resultant toxic release would not have

occurred had the Defendants exercised the high degree of care imposed on them by the nature of their cargo and unloading operations and by rules, regulations and statutes, including those set out in the Code of Federal Regulations, that control hazardous operations such as theirs, and Plaintiffs, therefore, plead the doctrine of res ipsa loquitour.

## SEVENTH CAUSE OF ACTION
## LIABILITY UNDER PUERTO RICO CIVIL CODE ARTICLE 1802

"A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done".  Puerto Rico Civil Code Article 1802.

Defendants, through their negligent acts and omissions described above, caused the damage suffered by Plaintiffs and they are liable therefore.

## DAMAGES

As a result of the explosion and fire, and the exposure to the toxic release caused by the Defendants, Plaintiffs suffered serious personal injuries as described before.  Plaintiffs further fear that, as a result of their injuries, they will suffer continuing adverse physical and psychiatric consequences and/or disabling diseases in the future and pray for medical monitoring ordered by the Court.

All of the above have caused considerable fear, anguish, discomfort, and inconvenience to Plaintiffs, as well as pain and suffering, mental anguish, emotional distress, and psychiatric and psychological damages.

Plaintiffs has suffered loss of income because of the injuries sustained estimated up to now in the amount of $40,000.00.

Plaintiffs are entitled to a judgment finding Defendants liable to Plaintiffs for all the damages suffered as a result of Defendants' negligence and awarding Plaintiff adequate compensation therefore in amounts determined by the trier of fact.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally for the following:

a. Economic and compensatory damages in amounts to be determined at trial, but not less than the $2,000,000.00;

b. Pre-judgment and post-judgment interest at the maximum rate allowable by law;

c. Attorney´s fees and costs of litigation;

f. Such other and further relief available under all applicable state, maritime and federal laws and any relief the Court deems just and appropriate, including medical monitoring pursuant to Court order, and

g. A trial by jury as to all Defendants.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 11th day of March, 2010.

s/
ÁLVARO R. CALDERÓN, JR.
USDC #108304
Attorney for Plaintiff
PO Box 192259
San Juan, PR  00919-2259
Phone:  (787) 753-5050
Fax:  (787) 765-8028
E-mail: arc@microjuris.com

s/
GLADYS E. GUEMAREZ SANTIAGO
USDC #208109
Attorney for Plaintiff
PO Box 367113
San Juan, PR 00936-7113
Phone:  (787) 756-5957
Fax:  (787) 765-6185
E-mail:  gguemarez@gmail.com